MISSISSIPPI POWER & LIGHT CO. *v.* TOWN OF BATESVILLE.

(Division B. Feb. 19, 1940.)

[193 So. 814. No. 34056.]

738

**Green & Green**, of Jackson, for appellant.

**D. R. Johnson**, of Batesville, for appellee.

**Hindman Doxey,** of Holly Springs, for appellee.

744

Argued orally by **Marcellus C. Green,** for appellant, and by **Hindman Doxey** and **D. R. Johnson,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Proceeding under chapter 185, Laws of 1936, the appellee, the town of Batesville, passed the necessary resolutions, and ordered the election provided for therein, which resulted in authorizing the issuance of the bonds; then, having passed the final order, directed issuance of the bonds in the sum of $35,000. The transcript of the record was submitted to the state bond attorney for his approval; and proceedings were initiated before the chancellor for the validation thereof under chapter 10, Code of 1930 (section 312 et seq.).

On the day set for the hearing of the validation proceeding by the chancellor, the appellant, the Mississippi Power & Light Company, appeared and filed certain objections to the issuance of the bonds, which, after considering them, that court overruled, and validated the bond issue. From the decree in the chancery court, the Mississippi Power & Light Company appealed.

It is unnecessary to set forth the resolutions at length, under chapter 185, Laws of 1936, such references as are necessary will be made thereto, in order to understand the points raised.

1. The appellant contends that under the statute in

question it was mandatory that notices of the election resolution should be posted in five public places in the municipality; that the posting of such notices was a condition precedent to the holding of the election; and that, because of failure to do so, the entire proceeding is null and void.

The record shows that the election resolution provided for in chapter 185, Laws of 1936, was published in the Panolian, a newspaper published and circulating in the municipality of Batesville, Mississippi.

Section 4 of that chapter provides that before bonds are issued thereunder, and election shall be held, and the governing body of the municipality shall adopt a resolution, called the election resolution, stating the necessary facts. The pertinent part of section 4, here involved, is as follows: "Such election resolution shall be published in full at least once, not less than fifteen days prior to the date fixed for such election, in a newspaper published and circulating in the municipality, or, if there be no such newspaper, then such election resolution shall be so published in a newspaper circulating in the municipality and shall also be posted not less than fifteen days prior to the date fixed for such election in five public places in the municipality."

It will be noted that the legislature, in providing for the publication of this notice, first required that such election resolution should appear on a newspaper published and circulating in the municipality. In this case there is no question as to the publication of the election resolution, in compliance with the statute, in the Panolian, a newspaper published and circulating in the town of Batesville.

However, appellant contends that under the language of this statute, even though the resolution was so published, it still was necessary to post copies thereof in five public places in the municipality.

We are of opinion that the Legislature plainly expressed a preference for the publication of the election

resolution in a newspaper published and circulating in the particular municipality wherein the election was to be held. But connected with such provision by the conjunction "or" it is further stated that, "if there be no such newspaper, then such election resolution shall be so published in a newspaper circulating in the municipality and shall also be posted not less than fifteen days prior to the date fixed for such election in five public places in the municipality."

It will be observed that the first alternative, the preference of the Legislature, does not in terms require the posting of notices; but in event that method cannot be complied with, out of abundance of caution, in an effort to make certain that notice is given to the electorate of the municipality, it provides for publication in a newspaper circulating in the municipality; but being of the opinion that this was not sufficient, it is further provided that five notices shall be posted in five public places. The language, "if there be no such newspaper, then such . . . resolution," etc., means only that the resolution could be printed in a newspaper not published in the municipality, when the other condition preceding the conjunction "or" does not exist; and the words, "shall . . . also be posted," etc., strengthens this view. In other words, the provision relative to the posting of the notices does not refer to the first method of publication, but to the alternative method, following the word "or."

We do not think the argument as to the analogy between this statute and the statute relative to the publication of notice of foreclosure sales, section 2167, Code 1930, has any application here. The word "then," and the words "and also," tend to remove the second alternative from any connection with the first; and also shows that the publication in a newspaper was to be supplemented by the posting of notices only in the vent of the second contingency. We think the meaning of the language is clear. The statute did not require the no-

tice to be posted when published in a newspaper published and circulating in that municipality.

2. It is contended that the resolution, as adopted by the city government authorities, and published, renders its purpose vague and uncertain. The language to which the appellant objects is as follows: "The following purpose, to-wit: not to exceed the sum of $40,000.00 of bonds for the purpose of raising funds with which to acquire an electric plant, to furnish electric service to consumers." And in the body of the resolution this appears: "For the purpose of raising funds with which to acquire by construction or purchase, or both by construction and purchase, an electric plant and/or distributing system to furnish electric service to consumers, said bonds to be paid primarily from revenues received from customers on said distributive system, and, to the extent of any deficiency in such revenues, from taxes, as authorized and provided in Chapter 185 of the General Laws of the 1936 Legislature of Mississippi."

In 5 McQuillin on Municipal Corp. (2 Ed.), section 2356, we find the following: "The notice of election must state the purpose of the election, and must be definite and not misleading. However, of course, if a notice is as definite as it can be made, under the circumstances, it is sufficient. So generally, it must state in case of bond elections, the purpose of the issue, the amount of the proposed issue, the rate of interest the bonds will bear, the maturity of the bonds, and the place of the election."

A reading of this entire act will show that it was the purpose of the Legislature to provide a method separate and apart from all others, by which the governing authorities might acquire electric light plants for the purpose of selling their product to customers, as provided in the act.

The exact contention of the appellant here is that it was not sufficient to set forth that the governing body desired to issue bonds for the purpose of raising funds with which to acquire an electric plant; that the municipality

must have selected its method for the acquisition of the said plant. The contention is that if it is desired to construct a plant, the resolution should say so; and that if it is desired to purchase the plant of another, the resolution should so state; but that the resolution could not provide for both methods of acquiring an electric light plant.

There is authority in other states, construing other statutes not like the one at bar, which holds to the effect that the governing body might not issue bonds for the purpose of constructing or erecting its electric light plant. But it is perfectly clear from this entire act that the only question required by the Legislature to be submitted to the voters was as to the purpose to acquire an electric light plant.

In subdivision (e) of section 2 of the act here involved, we find this definition: "The term 'acquire' shall mean to purchase, to lease, to construct, to reconstruct, to replace, or to acquire by gift or exercise of the right of eminent domain."

Further, in subdivision (a) of section 3 of said act, it is said that authority is given, "To acquire, improve, operate and maintain," an electric light plant. And section 24 thereof declares that: "This act is for the public purpose of promoting the increased use of electricity in the urban and rural areas of this state, and to enable all counties, as well as cities and towns, to secure the benefit of the surplus power generated or to be generated by the Tennessee valley authority at Wilson dam in the state of Alabama and Norris dam in the state of Tennessee, or the power generated at any other works or dams. This act is remedial in nature and the powers hereby granted shall be liberally construed to effectuate the purposes hereof, and to this end every municipality shall have power to do all things necessary or convenient to carry out the purposes hereof in addition to the powers expressly conferred in this act."

In our opinion, it would defeat the purpose of this act

if we were to hold that the governing authorities of a municipality or county would be required to say whether or not they would purchase an electric plant already constructed, or construct one of their own. The manifest purpose of the act was to give the governing authorities the power to do that which is determined to be best; and we think this is fully demonstrated by the use of the word "acquire" in the act, as well as the definition thereof. We think the resolution here fully expresses the purposes of the governing body of the town of Batesville, under the terms of the act. Nothing more was required.

3. It is insisted that the validating court did not obtain jurisdiction to determine the validity of the bonds, because section 2964, Code of 1930, was not complied with in the publication of notice of validation proceedings, in that it did not show that the seal of the court was affixed to the printed notice to taxpayers, issued by the clerk.

When this point is boiled down, it simply means that the publication of the notice of validation of the proceedings by the clerk, under section 313, Code of 1930, did not have printed thereon the seal of the chancery court of that county. This notice was addressed, pursuant to the requirements of section 313, supra, to the taxpayers of the municipality, advising of the proposed bond issue, and that the matter of validation would be heard by the chancellor on the day named therein.

We do not think this notice comes within the provision of section 2964, Code of 1930; and the process there refered to is not a newspaper notice to taxpayers, such as is required under said section 313. Seé Mullins v. Lyle, 183 Miss. 297, 183 So. 696, wherein we think this point is settled.

However, we call attention to the fact that section 2972, Code of 1930, undertakes to give the substance of what shall be contained in a summons by publication, and the seal of the court was not regarded as a substan-

tial part of that summons—had it been, the Legislature would have said so.

These are the only points presented, and it is, we think, conceded that the proceedings are otherwise regular and valid.

The chancellor confirmed the validation of the bonds. Affirmed.